IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
COLUMBIA DIVISION

SHARN GREEN aka SHAWN GREEN, )
)
    Plaintiff, )
)
v. ) Case No. 1:10-00068
) Judge Trauger/Knowles
CORRECTIONS CORPORATION OF )
AMERICA, et al., )
)
    Defendants. )

## REPORT AND RECOMMENDATION

### I. Introduction and Background

This matter is before the Court upon a Motion for Summary Judgment filed by Defendants Corrections Corporation of America ("CCA")/South Central Correctional Facility ("SCCC"), Warden Cherry Lindamood, Grievance Chairperson Leigh Kilzer, Unit Manager Mark Hacker, Case Manager Sabrina Tomlinson, and Case Manager Kristen Buttram ("Defendants"). Docket No. 61.[1] Along with their Motion, Defendants have contemporaneously filed a supporting Memorandum of Law and a Statement of Material Undisputed Facts, along with the Declarations of Defendants Lindamood, Hacker, Kilzer, Buttram, and Tomlinson. Docket Nos. 61-63.

---

[1] The Tennessee Department of Correction was terminated as a Defendant in this action by an Order entered December 8, 2010. Docket No. 53. On March 15, 2011, the undersigned submitted a Report and Recommendation recommending that Gayle Ray likewise be terminated as a Defendant (Docket No. 77), which was subsequently accepted by Judge Trauger (Docket No. 86). Ruben Hodge was added as a Defendant on February 15, 2011, and is not a party to the instant Motion. See Docket Nos. 30, 35, and 39. Defendant Hodge filed a Motion to Dismiss on March 17, 2011, which will be addressed in a separate Report and Recommendation. Docket No. 79.

1

Plaintiff has responded to Defendants' Motion for Summary Judgment (Docket No. 75), but not their Statement of Material Undisputed Facts.

Plaintiff filed this pro se, in forma pauperis action pursuant to 42 U.S.C. §1983, alleging that Defendants violated his Eighth and Fourteenth Amendment rights when they allegedly failed to provide him with hygiene kits in October 2009, December 2009, January 2010, February 2010, March 2010, May 2010, and June 2010. Docket No. 1. Plaintiff avers that Defendants refused to provide him hygiene kits because he was not considered an indigent inmate, since he was employed by the prison and earned more than $6.00 per month. *Id.* Plaintiff argues that, because "the state are taken all my money once I get paid," he is, in fact, indigent, such that Defendants must provide him hygiene kits. *Id.* Plaintiff avers that he suffered from depression and stress as a result of not being able to "take care" of his hygiene. *Id.* Plaintiff has submitted, as attachments to his Complaint, three notarized Affidavits from inmate witnesses testifying that Plaintiff did not receive hygiene kits. Docket Nos. 2-4. Plaintiff seeks compensatory and punitive damages, costs, and "any other relief deemed appropriate by this Court and the jury." Docket No. 1.[2]

Defendants filed the instant Motion and supporting materials on February 11, 2011. Docket Nos. 61-63. Defendants contend that there are no genuine issues as to any material fact and they are entitled to a judgment as a matter of law because: (1) the undisputed evidence

---

[2] Plaintiff subsequently twice amended his Complaint: first to add Gayle Ray as a Defendant, and later to add Ruben Hodge as a Defendant. *See* Docket Nos. 39, 40, 47, 57, 76. As has been noted, the undersigned has submitted a Report and Recommendation recommending that Gayle Ray be terminated as a Defendant in this action (*see* Docket No. 77), and the Motion to Dismiss filed by Defendant Hodge is not yet ripe for review.

demonstrates that the conditions of Plaintiff's confinement were not unconstitutional, as Plaintiff did not suffer an objectively "sufficiently serious" deprivation and Defendants did not disregard, or show deliberate indifference to, an excessive risk to Plaintiff's health or safety; (2) respondeat superior is not a proper basis for the imposition of liability under §1983; (3) liability cannot be imposed on Defendants Lindamood and Kilzer based on their involvement in the inmate grievance procedures; (4) pursuant to 42 U.S.C. §1997e, Plaintiff has failed to exhaust his administrative remedies with regard to Defendants Kilzer and Buttram; and (5) Plaintiff has failed to demonstrate that any policy or custom of CCA/SCCC caused the alleged violation of his constitutional rights. *Id.*

Plaintiff responds that: (1) Defendants did not allow him sufficient time to obtain or take discovery; (2) he asked all Defendants to help him get hygiene kits, but they refused; (3) he filed several grievances regarding the issue, but they were all denied because he was not indigent; and (4) although he makes $40.00 per month at his prison job, "the Court takes all of it before I can spend any of it," so he does not have any money left to purchase a hygiene kit. Docket No. 75.

For the reasons set forth below, the undersigned recommends that Defendants' Motion for Summary Judgment (Docket No. 61), be GRANTED.

## II. Undisputed Facts[3]

---

[3] The following facts are in a form required by Fed. R. Civ. P. 56, and are undisputed.

Cherry Lindamood is a CCA employee, who at all times relevant to the case at bar, served as the SCCC Warden. Docket No. 61-1, Declaration of Cherry Lindamood ("Lindamood Dec."), ¶¶ 2-3. Mark Hacker is a CCA employee, who at all times relevant to the case at bar, served as the SCCC Unit Manager. Docket No. 61-2, Declaration of Mark Hacker ("Hacker Dec."), ¶¶ 2-3. Leigh Kilzer is a CCA employee, who at all times relevant to the case at bar, served as a SCCC Grievance Chairperson. Docket No. 61-3, Declaration of Leigh Kilzer ("Kilzer Dec."), ¶¶ 2-3. Kristen Buttram is a CCA employee, who at all times relevant to the case at bar, served as a SCCC Case Manager. Docket No. 61-4, Declaration of Kristen Buttram ("Buttram Dec."), ¶¶ 2-3. Sabrina Tomlinson is a CCA employee, who at all times relevant to the case at bar, served as a SCCC Case Manager. Docket No. 61-5, Declaration of Sabrina Tomlinson ("Tomlinson Dec."), ¶¶ 2-3. SCCC is owned and operated by CCA. Lindamood Dec., ¶ 4.

Defendants Lindamood or Kilzer were not personally or physically involved in distributing hygiene supplies to Plaintiff. Lindamood Dec., ¶ 5; Kilzer Dec, ¶ 4.

Defendants did not implicitly authorize, approve, or knowingly acquiesce to any unconstitutional conduct that Plaintiff alleges occurred during his time of incarceration at SCCC. Lindamood Dec., ¶ 6; Hacker Dec, ¶ 4; Kilzer Dec., ¶ 5; Buttram Dec., ¶ 4; Tomlinson Dec., ¶ 4. Defendants did not intentionally deny Plaintiff any hygiene products when they had knowledge of his need or request. *Id.*

At all times relevant to this action, SCCC/CCA had in place policies and procedures concerning which inmates qualified for indigent status, which inmates qualified for the free

4

distribution of indigent hygiene kits, and what items are included in an indigent hygiene kit. Lindamood Dec., ¶¶ 7-8 and Ex. A; Hacker Dec., ¶¶ 5-6; Buttram Dec., ¶¶ 5-6; Tomlinson Dec., ¶¶ 5-6.

SCCC/CCA Policy #112.08(IV)(B) defines "indigent inmate" as, "any inmate whose regular income from any source is less than $6.00 per month and whose trust fund balance is less than $6.00." Lindamood Dec., Ex. A.

SCCC/CCA Pollicy # 122.08(VI0(B) states:

> Articles necessary for maintaining personal hygiene shall be provided to all inmates eligible for skill/pay level 0 according to Policy #504.04.
>
> 1. Personal hygiene articles include, but are not limited to, soap, a toothbrush, toothpaste or powder, a comb, shampoo, and deodorant.
>
> 2. Shaving equipment should be made available upon request.
>
> 3. Hygiene articles shall be packaged and distributed to qualified inmates once each month. The Warden shall designate staff to make an entry on Contact Notes, (LCDG), contact type KITI (Kit Issued), for each inmate who receives a hygiene kit.
>
> 4. A record shall be kept showing inmate status and articles distributed.

Lindamood Dec., ¶¶ 10, 15, and Ex. A.

SCCC/CCA Policy #504.04(VI)(A) states in pertinent part as follows:

> Pay rate levels:
>
> Pay rates will be determined by the skill level of each job as defined by the master job list and the length of successful time spent in that skill level by an inmate worker.

> 1. Level 0: Inmates without program assignment, including those whose custody status and/or health status renders them unsuitable for assignment to positions available at their institution, and inmates unassigned due to segregation placement. These inmates will be provided with a hygiene kit prepared by the institution on a monthly basis, provided they have not had a balance of $6.00 or more any time during the pay period. The Assistant Commissioner of Operations will notify the Warden of the required contents of these kits. (See Policy #208.01)

Lindamood Dec., ¶¶ 11, 15, and Ex. A.

SCCC/CCA Policy #208.01(VI)(C) states:

> Withdrawals from the trust fund shall be made as follows:
>
> 1. Withdrawals may be made from an inmate's account without consent if the withdrawal is allowed by policy, statute (including but not limited to levied Criminal Injuries Compensation Fees and Litigation taxes when certification has been received from the court and court costs imposed against the inmate and paid by the state), or court order. [Central Trust Fund Administration] will enter those court costs paid by the State on TOMIS (screen LCDU, code STA). Notification of such withdrawals shall be made to the inmate.

Lindamood Dec., ¶¶ 12, 15, and Ex. A.

SCCC/CCA Policy #208.01(VI)(T) states:

> Inmates who have not had a trust fund balance of $6.00 or more at any time during the pay period will receive a hygiene kit. INFOPAC report BI01MKO, Offenders Eligible to Receive Hygiene Kits, will be available on the 17th day of each month. Inmates listed on this report are to receive their hygiene kit within five working days. Each Warden shall designate staff to distribute the hygiene kits.

Lindamood Dec., ¶¶ 13, 15, and Ex. A.

At all times relevant to this action, SCCC/CCA had in place a policy/procedure concerning the institution's providing of postage stamps to inmates of indigent status. Lindamood Dec., ¶¶ 14-15, and Ex. A.

SCCC/CCA Policy #507.02(VI)(K), concerning outgoing mail, states in pertinent part as follows:

> 2. Indigent inmates assigned to reception centers may be provided with a maximum of four postage stamps. All other indigent inmates may receive two postage stamps per pay period through the Chaplain's office, upon written request.
>
> 3. Except as otherwise provided herein, when the inmate bears the cost of mailing, there is no limit to the number of letters the inmate can sent or receive, or to the length, language, or content of mail. First class postage for outgoing legal mail shall be provided by the institution only for mail being sent by indigent inmates to the attorney, court, or offices involved in the inmates legal matters. Indigent inmates assigned to reception centers may be provided with a maximum of four postage stamps prior to the inmate receiving funds as defined in Policy #112.08.

Lindamood Dec., ¶¶ 13, 15, and Ex. A.

SCCC/CCA has, and did have during the relevant time period, a grievance policy in place by which inmates could file grievances. Kilzer Dec., ¶¶ 7-8, and Ex. A. Pursuant to its contract with the State of Tennessee, SCCC uses TDOC Policy #501.01 to govern inmate grievances. *Id.* This policy defines a grievance as a "written complaint concerning the substance or application of a written or unwritten policy or practice, any single behavior or action toward an inmate by staff or other inmate, or any condition or incident within the Department or institution which personally affects the inmate complainant." *Id.* This portion of HCCF's grievance procedure

7

concerns the content of inmate grievances and instructs inmates to this end. *Id.*

During the relevant time period, Plaintiff did not file any grievances regarding any action by Defendants Kilzer or Buttram. Kilzer Dec., ¶ 9.

On March 18, 2010, Plaintiff refused a hygiene kit that was offered to him. Buttram Dec., ¶¶ 7-8, and Ex. A. Defendant Buttram was the SCCC staff member who discussed with Plaintiff his refusal of the hygiene kit. *Id.* Plaintiff refused the hygiene kit due to its lack of postage stamps and yelled at Defendant Buttram that he would "see him in court." *Id.* Plaintiff's statement was perceived as an attempt to intimidate Defendant Buttram as a staff member, and a disciplinary charge arose from the incident. *Id.*

On April 28, 2010, the SCCC grievance clerk received an inmate grievance from Plaintiff. Lindamood Dec, ¶¶ 16-17, and Ex. B. In this grievance, Plaintiff states that, on March 18, 2010, an indigent hygiene kit was offered to him by SCCC staff, but that he refused the kit because it did not include postage stamps. *Id.* Plaintiff stated that he needed the stamps to mail letters to family members. *Id.* Plaintiff also stated that "every month" there was something missing from his indigent hygiene kit. *Id.* Plaintiff further stated that, "if the unit team [won't] give me the whole kit, don't give me anything." *Id.* Plaintiff went on to accuse SCCC staff of lying about providing him an indigent hygiene kit every month. *Id.* Plaintiff complained of his non indigent status, as it relates to the income from his work assignment being deducted from his trust fund account to pay court costs and litigation taxes. *Id.*

In response to Plaintiff's April 28, 2010 inmate grievance, Defendant Hacker issued a response stating:

> Inmate Green is not on the indigent kit list. The Unit Team has
> provided I/M Green a kit every month since he requested. Mailing
> stamps are not provided unless you are on the infopac report,
> which he is not.

Lindamood Dec., ¶¶ 16-17, and Ex. B; Hacker Dec., ¶¶ 8-9.

On September 15, 2010, the SCCC grievance clerk received an inmate grievance from Plaintiff. Lindamood Dec., ¶¶ 16, 18, and Ex. C. In his grievance, Plaintiff stated that he had not received an indigent hygiene kit in the months of April, May, June, July, and August of 2010. *Id.* Plaintiff further complained about his non-indigent status, as it relates to the income from his work assignment being deducted from his trust fund account to pay court costs and litigation taxes. *Id.* Plaintiff stated that he borrowed hygiene items from other inmates and that "sometime I go without soap toothpaste and etc." *Id.*

The September 17, 2010 supervisor's response to Plaintiff's September 15, 2010 inmate grievance states:

> I/M is not on the list for a hygiene kit nor has I/M asked for a kit.
> On 3-18-10 staff offered him a kit which he refused and stated he
> did not want one unless it has stamps. If I/M needs a hygiene kit
> all he has to do is ask for it monthly.

Lindamood Dec., ¶¶ 16, 18, and Ex. C.

On September 20, 2010, the SCCC grievance chairperson responded to the grievance stating that she "concurred with supervisor," and that "I/M is not on hygiene list and must request it though his unit team." Lindamood Dec., ¶¶ 16, 18, and Ex. C.

Warden Lindamood responded to the grievance on September 27, 2010, stating:

9

> According to TDOC policy, inmate does not meet definition of indigent. He is offered hygiene items, but refuses due to no stamps. We are not obligated to provide anything.

Lindamood Dec., ¶¶ 16, 18, and Ex. C.

According to SCCC/CCA policy, Plaintiff did not meet the requirements for indigent status during the months relevant to this action and SCCC did not automatically issue him a hygiene kit. Lindamood Dec., ¶¶ 22-23; Hacker Dec., ¶¶ 7, 10; Buttram Dec., ¶¶ 9-10; Tomlinson Dec., ¶¶ 7-8. Whether or not Plaintiff received a hygiene kit during these months was within his power. *Id.* Plaintiff had been informed on numerous occasions by SCCC staff of his duty to request a hygiene kit due to his non-indigent status. *Id.*

According to SCCC's contact notes, Plaintiff was issued a hygiene kit on the following dates relevant to this action: November 20, 2009, December 27, 2009, January 25, 2010, February 26, 2010, March 18, 2010, October 14, 2010, and December 13, 2010. Lindamood Dec., ¶¶ 20-21 and Ex. D.

At no time did Plaintiff state or present any request for medical care to Defendants Hacker, Buttram, or Tomlinson concerning any injury or physical ailment that he claimed was related to hygiene or need for hygiene products. Hacker Dec., ¶ 12; Buttram Dec., ¶ 12; Tomlinson Dec., ¶ 10.

At no point during the relevant time period did Plaintiff complain of, or file, an inmate grievance concerning the availability of postage stamps for legal mail. Lindamood Dec., ¶¶ 16, 19; Hacker Dec., ¶ 11; Kilzer Dec., ¶ 10; Buttram Dec., ¶ 11; and Tomlinson Dec., ¶ 9.

Defendants Lindamood and Kilzer's only involvement concerning the allegations set

10

forth by Plaintiff was their roles in reviewing and responding to Plaintiff's inmate grievances. Lindamood Dec. ¶ 5; Kilzer Dec., ¶¶ 4, 6.

Defendant Lindamood has no recollection or record of Plaintiff ever complaining to her directly concerning the allegations set forth in the Complaint. Lindamood Dec., ¶ 5.

### III. Analysis

**A. Local Rules 56.01(c) and (g)**

With respect to Motions for Summary Judgment specifically, Local Rules 56.01(c) and (g) state, in pertinent part:

> c. Any party opposing the motion for summary judgment must respond to each fact set forth by the movant ...
>
> . . .
>
> g. Failure to respond to a moving party's statement of material facts, or a non-moving party's statement of additional facts, within the time periods provided by these Rules shall indicate that the asserted facts are not disputed for the purposes of summary judgment.

Plaintiff has failed to respond to Defendants' Statement of Material Undisputed Facts. Pursuant to Local Rule 56.01(g), Plaintiff's failure to respond indicates "that the asserted facts are not disputed for the purposes of summary judgment." Accordingly, there are no genuine issues as to any material fact and all that remains to be determined is whether Defendants are entitled to a judgment as a matter of law.

**B. Motion for Summary Judgment**

It would be inappropriate to grant Defendants' Motion solely on the ground that Plaintiff has failed to respond to its Statement of Material Undisputed Facts. *See Stough v. Mayville Community Schools*, 138 F.3d 612, 614 (6th Cir. 1998). As the Sixth Circuit has stated:

> [A] district court cannot grant summary judgment in favor of the movant simply because the adverse party has not responded. The Court is required, at a minimum, to examine the movant's Motion for Summary Judgment to ensure that he has discharged [his initial] burden ... The federal rules require that the party filing a Motion for Summary Judgment "always bears the burden of demonstrating the absence of a genuine issue as to a material fact."

*Id.* (citations omitted). The Court will, therefore, consider whether Defendants have met their burdens under the appropriate summary judgment standards discussed below.

Under Fed. R. Civ. P. 56(c), summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." A dispute is "genuine" only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986).

In order to prevail on a Motion for Summary Judgment, the moving party must meet the burden of proving the absence of a genuine issue as to material fact concerning an essential element of the opposing party's claim. *Celotex v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 265 (1986); *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989). In determining whether the moving party has met its burden, the Court must view the evidence in the light most favorable to the nonmoving party. *Matsushita Electric Indus. Co. v.*

*Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986).

Fed. R. Civ. P. 56 provides that the nonmoving party may not rest upon the mere allegations or denials of his or her pleading, but his or her response, by affidavits or otherwise, must set forth specific facts showing that there is a genuine issue for trial. If a nonmoving party, however, fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial, there is no genuine issue as to any material fact because a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. *Celotex*, 477 U.S. at 322-23, 106 S. Ct. at 2552, 91 L. Ed. 2d at 273. When this occurs, the moving party is entitled to summary judgment as a matter of law. *Id.* at 322-23, 106 S. Ct. at 2552; *Williams v. Ford Motor Co.,* 187 F.3d 533, 537-38 (6th Cir. 1999).

## **C. 42 U.S.C. § 1983**

Plaintiff alleges violations of his Eighth and Fourteenth Amendment rights pursuant to 42 U.S.C. §1983. *See* Docket No. 1. Section 1983 provides, in part, that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress...

Thus, in order to state a claim under §1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged

13

deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48, 108 S. Ct. 2250, 2254-55 (1988), *citing Parratt v. Taylor,* 451 U.S. 527, 535, 101 S. Ct. 1908, 1913, 68 L. Ed. 2d 420 (1981) (overruled in part on other grounds, *Daniels v. Williams,* 474 U.S. 327, 330-331, 106 S. Ct. 662, 88 L. Ed. 2d 662 (1986)); *Flagg Bros., Inc. v. Brooks,* 436 U.S. 149, 155, 98 S. Ct. 1729, 1733, 56 L. Ed. 2d 185 (1978). The traditional definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power "possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *Id.* at 49, 108 S. Ct. 2255, *quoting United States v. Classic,* 313 U.S. 299, 326, 61 S. Ct. 1031, 1043, 85 L. Ed. 1368 (1941).

**D. The Case At Bar**

As an initial matter, as has been discussed, in order to state a claim under §1983, Plaintiff must demonstrate that his constitutional rights have been violated. While Plaintiff alleges that the lack of hygiene supplies violates his Eighth and Fourteenth Amendment rights, it is undisputed that Plaintiff's lack of hygiene supplies was a direct result of his refusal of the kits that were offered to him. It is further undisputed that Plaintiff refused the hygiene kits that were offered to him because they did not contain stamps that he could use to send mail to his family. Plaintiff has cited no authority for the propositions that hygiene kits must contain stamps, or that as a non-indigent inmate, he has a constitutional right to receive stamps for non-legal use. Additionally, Plaintiff has cited no authority for the proposition that a lack of hygiene supplies resulting from his own refusal of the kits offered him, rises to the level of a constitutional violation. Without the violation of a constitutionally protected right, Plaintiff cannot recover under §1983.

Because it is undisputed that Plaintiff's lack of hygiene supplies was a direct result of his own refusal of the hygiene kits that Defendants offered him, Plaintiff cannot demonstrate that Defendants violated his Eighth or Fourteenth Amendment rights. Accordingly, Defendants' Motion for Summary Judgment should be granted.

## VI.  Conclusion

For the reasons discussed above, the undersigned concludes that there are no issues as to any material fact and that Defendants are entitled to a judgment as a matter of law. Accordingly, the undersigned recommends that Defendants' Motion for Summary Judgment be GRANTED.

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has fourteen (14) days after service of this Report and Recommendation in which to file any written objections to this Recommendation with the District Court. Any party opposing said objections shall have fourteen (14) days after service of any objections filed to this Report in which to file any response to said objections. Failure to file specific objections within fourteen (14) days of service of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. *See Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L. Ed. 2d 435 (1985), *reh'g denied*, 474 U.S. 1111 (1986); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

E. CLIFTON KNOWLES
United States Magistrate Judge